UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| OSCAR RUBEN APAC, | § | |
| *Plaintiff,* | § | |
| v. | § | |
| | § | EP-24-CV-00262-DCG |
| JESUS M. VILLAR, | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiff Oscar Ruben Apac's ("Plaintiff") "Motion for Default Judgment" (ECF No. 13), filed on October 21, 2024. On October 21, 2024, Senior United States District Judge David C. Guaderrama referred the motion to the undersigned for review and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Appendix C to the Local Rules of the United States District Court for the Western District of Texas. For the following reasons, the Court **RECOMMENDS** that Plaintiff's Motion for Default Judgement be **GRANTED IN PART** and **DENIED IN PART**.

## I.  BACKGROUND

### A.  Factual Background

This case arises from alleged violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181. Title III prohibits "discrimination against persons with disabilities by places of public accommodation and services operated by private entities." *Betancourt v. Federated Dep't Stores*, 732 F. Supp. 2d 693, 700 (W.D. Tex. 2010). Places of public accommodation include "a restaurant, bar, or other establishment serving food or drink." 42 U.S.C. § 12181(7)(B).

1

Plaintiff is a disabled El Paso, Texas resident who has "significant mobility impairments and uses assisted devices for mobility." Compl. ¶ 5, ECF No. 1. Defendant Jesus M. Villar ("Defendant") owns and manages the building where Armando's Café #3 is located. *Id.* ¶ 6; Pl.'s Default J. Mot. ¶¶ 5, 7, ECF No. 13. Armando's Café #3 is a restaurant and thus a place of public accommodation. Compl. ¶ 6.

Plaintiff alleges that Defendant discriminated against him in violation of Title III of the ADA. Specifically, Plaintiff asserts that in April 2024, Plaintiff attempted to visit Armando's Café #3 but was unable to access the restaurant because it refuses to offer ADA-compliant disabled parking. *Id.* ¶¶ 5–6; Pl.'s Default J. Mot. ¶ 6. Plaintiff further maintains that the establishment lacks ADA-required handicapped parking signs. Compl. ¶ 9; Pl.'s Default J. Mot. ¶ 6.

Plaintiff alleges that he has standing to pursue his ADA claim because he "has visited the Defendant's property" and intends to return. Compl. ¶ 24. He further alleges that the restaurant's failure to comply with ADA parking requirements impacts his daily life because he is a resident of El Paso, Texas and is unable to patronize local businesses. *Id.* ¶ 28. The Court agrees with Plaintiff and finds that he has standing to pursue his claim.[1]

**B.    Procedural History**

On August 1, 2024, Plaintiff filed his Original Complaint, seeking relief against Defendant under the ADA. Compl. ¶ 1. He requested injunctive relief to repave and restripe the restaurant's

---

[1] *See Betancourt*, 732 F. Supp. 2d at 710–11 (holding that disabled plaintiff has standing for ADA Title III claim because plaintiff visited the store at issue, encountered architectural barriers that "interfered with her use and enjoyment" of the store, and stated that she plans to return); *cf. Strojnik v. 1530 Main LP*, No. 3:19-CV-01326-E, 2020 WL 981031, at *4 (N.D. Tex. Feb. 28, 2020) (finding that plaintiff has no standing to assert ADA claim against Dallas hotel because plaintiff visited hotel once, lives "hundreds of miles from Dallas," and does not indicate if he intends to return).

parking lot to comply with ADA requirements and declaratory relief affirming that disabled individuals have the right to access the services at Defendant's establishment. *Id.* ¶¶ 19–20. Additionally, Plaintiff requested $405 in filing fees, and $8,712.50 in attorney's fees for a total of $9,117.50. Pl.'s Mot. Default J. 8–9.

The Clerk of the Court issued summons for Defendant on August 6, 2024. Summons in a Civil Action, ECF No. 5. Plaintiff filed proof of executed summons, which indicated that the summons were delivered by registered mail to Defendant on August 12, 2024. Proof of Service 2–4, ECF No. 6. Defendant had twenty-one days from service to answer, which meant that Defendant's answer was due by September 3, 2024. Fed. R. Civ. P. 12(a)(1)(A)(i), 6(a)(1)(C). On September 16, 2024, after Defendant failed to timely answer or otherwise appear, Plaintiff requested entry of default against Defendant. Mot. Entry Default, ECF No. 10. On October 1, 2024, the Clerk of the Court entered default against Defendant. Entry of Default, ECF No. 11. Plaintiff filed a Motion for Default Judgment on October 21, 2024. Pl.'s Mot. Default J. To date, Defendant has not responded to the Motion or otherwise appeared in this matter.

## II.  LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs entry of default and default judgment. In ruling on a motion for default judgment, courts generally analyze the following three issues: (1) the procedural propriety of default judgment, (2) the substantive merits of the plaintiff's claims, and (3) the appropriate form of relief. *See RLI Ins. Co. v. 2 G Energy Sys., LLC*, 581 F. Supp. 3d 817, 823–26 (W.D. Tex. 2020); *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

Regarding the procedural propriety of the default, a defendant defaults if he or she fails to timely respond to the complaint. Fed. R. Civ. P. 55(a); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137,

141 (5th Cir. 1996). When default is shown "by affidavit or otherwise," the clerk of the court "must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default, the plaintiff may seek an entry of default judgment. Fed. R. Civ. P. 55(b). Default judgment is "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnotes omitted).

In deciding whether default judgment is procedurally proper, the court considers the following six factors:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) ("*Lindsey* factors").

Regarding the substantive merits of the default judgment the court accepts the plaintiff's well-pleaded allegations as true. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *U.S. for Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Default judgment is appropriate only if the pleadings provide a "sufficient basis" for the judgment. *Nishimatsu*, 515 F.2d at 1206. Courts apply the standard set in Federal Rule of Civil Procedure 8 for the sufficient basis inquiry.[2] Critically, however, the Rule 8 standard for a default judgment motion differs from the Rule 8 standard in a Rule 12(b)(6) motion. *See Wooten*

---

[2] Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see also id.* n.3 ("Although most cases addressing Rule 8 arise in the context of a Rule 12(b)(6) motion to dismiss, ... we decline to import Rule 12 standards into the default-judgment context.").

Whether default judgment is granted is discretionary with the court.  "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).  Rather, the district court "has the discretion to decline to enter a default judgment." *Lindsey*, 161 F.3d at 893.

Before examining whether entering a default judgment is appropriate, the Court must establish that subject matter jurisdiction and personal jurisdiction are proper.  *See Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)) (Before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (federal courts have independent duty to examine their own subject matter jurisdiction).

### III.  DISCUSSION

**A.  Court's Jurisdiction**

As an initial matter, the Court considers whether it has jurisdiction.  "Because federal courts have limited jurisdiction, parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings."  *MidCap Media Fin., LLC v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988)).  The plaintiff "bears the burden of establishing jurisdiction but is required to present only *prima facie* evidence."  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).  To determine whether the plaintiff has met this burden, the court can consider the

"assertions in the plaintiff's complaint," as well as "'the contents of the record at the time of the motion ....'" *Sangha v. Navig8 Ship Management Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (quoting *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006)).

A federal district court has subject matter jurisdiction over a federal question arising under the Constitution, a federal law, or a treaty. *See* 28 U.S.C. § 1331. Here, the Court has subject-matter jurisdiction over Plaintiff's ADA claims because the ADA is a federal statute. *Id.* Accordingly, the Court has subject matter jurisdiction over Plaintiff's claims. The Court next examines whether it may exercise personal jurisdiction over Defendant.

### 1. *General Jurisdiction*

There are two types of personal jurisdiction over defendant: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). General jurisdiction for an individual is proper in the state where the individual's domicile is located. *Id.*

Plaintiff does not assert that the Court has general personal jurisdiction over Defendant, and it is unknown from Plaintiff's Complaint or Motion whether Defendant is a resident of El Paso, Texas.[3] Accordingly, the Court does not find that it has general personal jurisdiction over Defendant.

### 2. *Specific Jurisdiction*

For specific jurisdiction, the suit must arise out of the defendant's contacts with the forum. *Bristol-Myers Squibb Co.*, 582 U.S. at 262. "[A] federal court may assert personal jurisdiction if the state long-arm statute permits jurisdiction and the exercise of such jurisdiction would not violate due process … Because the Texas long-arm statute extends to the limits of federal due

---

[3] Plaintiff only asserts that Defendant "owns, manages, controls, and leases the improvements and building" where Armando's Café #3 is situated in El Paso, Texas. Compl. ¶ 6. Plaintiff does not assert Defendant's personal domicile.

process, the two-step inquiry reduces to only the federal due process analysis." *Conn Appliances,*
*Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019) (internal quotes and citation omitted). The
analysis requires addressing whether the defendant "purposely availed himself of Texas's benefits
and protections" and whether exercising personal jurisdiction over the defendant in Texas would
not "offend traditional notions of fair play and substantial justice." *Id.* (citation omitted).

      a.  <u>Minimum Contacts</u>

A court must first identify the "universe of possible jurisdictional contacts" when
undertaking a minimum contacts analysis. *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div.*
*of Occupational Safety & Health of the State of California*, 1 F.4th 346, 352 (5th Cir. 2021). Those
contacts must demonstrate that a defendant "purposely directed its activities toward the forum state
or purposefully availed itself of the privileges of conducting activities there." *Seiferth*, 472 F.3d
at 271 (quotation omitted). "Mere foreseeability, standing alone, does not create jurisdiction."
*Moncrief Oil International Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007). But "a
nonresident can establish contact with the forum by taking purposeful and affirmative action, the
effect of which is to cause business activity (foreseeable by the defendant) in the forum state."
*Central Freight Lines Inc. v. APA Transport Corp*, 322 F.3d 376, 382 n.6 (5th Cir. 2003) (citing
*Mississippi Interstate Express Inc. v. Transpo Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982)).

Here, Plaintiff claims Defendant "owns, manages, controls, and leases the improvements
and building" where Armando's Café #3 is located. Compl. ¶ 6. Plaintiff does not articulate in
their Complaint or Motion how the Court has personal jurisdiction over Defendant and Defendant
does not contest personal jurisdiction given that he has failed to respond to the Motion or otherwise
appear in the action. Nevertheless, given that Defendant owns and manages the building where
the incident took place and the establishment engages in the business of selling food to patrons in

El Paso, Texas, the Court finds that Defendant has taken "purposeful and affirmative action" to create "business activity" in the forum state, such that Defendant is subject to specific personal jurisdiction in this suit.  Accordingly, the Court has specific personal jurisdiction over Defendant.

### b.  Fair Play and Substantial Justice

Furthermore, the Court finds that the exercise of specific personal jurisdiction does not offend traditional notions of fair play and substantial justice.   In determining this fundamental fairness issue, the Court must examine "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies."  *Oehring v. Spike Brewing, LLC*, No. 6:19-CV-00444-ADA, 2020 WL 3001052, at *4 (W.D. Tex. June 4, 2020) (quoting *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993) (citation modified)).  Since Plaintiff has sufficiently demonstrated that the Court may exercise specific personal jurisdiction over Defendant, "the burden shifts to the defendant to prove that personal jurisdiction is unreasonable."  *Baylor Univ. v. Vinatge Brand, LLC*, No. 6:21-CV-409-ADA, 2022 WL 1506286, at *6 (W.D. Tex. May 12, 2022) (citation modified).

Here, Defendant has not met his burden to prove that personal jurisdiction is unreasonable because Defendant failed to articulate any of the five factors above.  *See Pickett v. ACT Fulfillment Servs.*, No. 1:23-CV-00452-JRN, 2024 WL 1081529, at *8 (W.D. Tex. Jan. 23, 2024), *report and recommendation adopted*, No. A-23-CV-00452-JRN, 2024 WL 818395 (W.D. Tex. Feb. 27, 2024) (finding that defendant did not meet his burden that exercising specific personal jurisdiction would be unreasonable because he failed to articulate any of the five factors); *Oehring*, 2020 WL 3001052, at *4 (finding that where defendant failed to argue four of the five

factors of fundamental fairness in its briefing, defendant failed to meet its burden, and the court can exercise specific personal jurisdiction).

Accordingly, because the Court has specific personal jurisdiction over Defendant and Defendant has failed to meet his burden to show that exercising jurisdiction over him would be unreasonable, the Court may exercise personal jurisdiction over Defendant.  The Court next examines whether service of process and venue are proper.

### 3.  Service of Process and Venue

Plaintiff contends that Defendant was properly served.  Service may be carried out on an individual "in a judicial district of the United States by (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) … delivering a copy of the summons and of the complaint to the individual personally …."  Fed. R. Civ. P. 4(e).  Plaintiff served a copy of the summons and complaint on Defendant.  *See* Proof of Service.  Thus, Defendant was properly served.

Furthermore, venue is proper in this District because it is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2); *see* Compl. ¶ 4.  Specifically, the Western District of Texas is the District where Plaintiff was unable to access Armando's Café #3 because it lacks ADA-compliant parking spaces.

## B.  Procedural Propriety of the Default Judgment

Now that the Court has established that subject matter jurisdiction and personal jurisdiction are proper, the Court next turns to the three-part test to determine whether a default judgment should be entered against Defendant.  To review, the three-part test examines: (1) the procedural propriety of default judgment, (2) the substantive merits of

the plaintiff's claims, and (3) the appropriate form of relief. *See RLI Ins. Co.*, 581 F. Supp. 3d at 823–26. The first step is to review whether the entry of default judgment is procedurally warranted considering the six *Lindsey* factors. *See Lindsey*, 161 F.3d 886, 893 (5th Cir. 1998). The *Lindsey* factors include:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey.*, 161 F.3d at 893.

Here, the Court finds that all six *Lindsey* factors are satisfied. First, Defendant has not filed any responsive pleadings. Consequently, there are no material issues of fact at issue in the case. *See Cunningham v. Greenstar Cap. Sols.*, LLC, No. 4:18-CV-000161-ALM-CAN, 2018 WL 4572711, at *3 (E.D. Tex. Aug. 1, 2018) ("When a defendant defaults, he admits to the plaintiff's well-pleaded allegations of fact, and therefore, there are no material issues of fact.") (citation omitted), *report and recommendation adopted*, No. 4:18-CV-161, 2018 WL 4567706 (E.D. Tex. Sept. 24, 2018). Second, Plaintiff has been prejudiced and will continue to be prejudiced by the delay in this case due to Defendant's failure to timely respond, which threatens to bring the entire process to a halt. *See Lindsey*, 161 F.3d at 893. Third, the grounds for default are "clearly established" since Defendant has not responded to the summons, the entry of default, or the motion for default judgment. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding default judgment appropriate "if defendants are 'totally unresponsive' and the failure to respond is 'plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment'"). Fourth, there is no evidence that Defendant's default was caused by a good faith mistake or excusable neglect.

Fifth, default judgment against Defendant would not be unduly harsh, given that Defendant has been given notice and the opportunity to respond to this action.  Finally, the Court is not aware of any basis on which a court would think itself obliged to set aside Defendant's default.  Therefore, since all the *Lindsey* factors are satisfied, the Court finds that default judgment against Defendant is procedurally appropriate.

**C. Substantive Merits**

The second step in the three-part test to determine whether a default judgment should be entered is whether there is a sufficient basis in the pleadings for the judgment.  Due to the entry of default, Defendant is deemed to have admitted the allegations outlined in the Complaint.  *See Nishimatsu*, 515 F.2d at 1206 (explaining that "the defendant, by his default, admits the plaintiff's well-pleaded allegations of fact …").  Nonetheless, the Court must review the pleadings to determine whether they provide a sufficient basis for Plaintiff's claim for relief.  *See id.*  In conducting this analysis, the Fifth Circuit has looked to Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to give the defendant fair notice of what the claim is and the grounds upon which it rests." The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." "Detailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Wooten*, 788 F.3d at 498 (citation modified).

### *1.  Plaintiff has adequately alleged a violation of 42 U.S.C. § 12182(a).*

Plaintiff brings a claim under Title III of the ADA.  The provision sets out that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public

accommodation." 42 U.S.C. § 12182(a). A successful claim under this provision must satisfy three elements: "(1) the plaintiff has a disability; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminates against the plaintiff in connection with that public accommodation based on the plaintiff's disability." *Hernandez v. El Pasoans Fighting Hunger*, No. 22-50240, 2022 WL 18019437, at *3 (5th Cir. Dec. 30, 2022) (per curiam).

Here, the Court finds that Plaintiff has sufficiently pled the first and second elements. Regarding the first element, Plaintiff alleges that he is disabled "as established by the federal government and the Social Security Administration" and has a "disabled placard on his vehicle as issued by the State of Texas." Compl. ¶ 5. Regarding the second element, Plaintiff alleges that Defendant "owns, manages, controls, and leases the improvements and building where the Armando's Café #3 is situated." *Id.* ¶ 6. Furthermore, Plaintiff alleges that Armando's Café #3 is a public accommodation. *Id.* ¶ 8. Accordingly, the Court finds that Plaintiff has adequately pled the first and second elements of his claim.

Under the third element, Plaintiff asserts that he was subjected to three types of discrimination due to Defendant's failure to provide ADA-compliant parking at the restaurant: "failure to remove architecture barriers when such removal is readily available" in violation of 42 U.S.C. § 12182(b)(2)(A)(iv), "failure to make reasonable modifications in policies, practices, or procedures" in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and "failure to make alterations" in violation of 42 U.S.C. § 12183(a)(2). *Id.* ¶ 17.

Regarding the third element of discrimination, the Court finds that Plaintiff has adequately pled an "architectural barrier" claim but not a "modification in policy" or "alteration" claim. The Court addresses each discrimination claim in turn:

a. *42 U.S.C. 12182(b)(2)(A)(iv) "Architectural Barrier" Violation*

First, Plaintiff asserts that ADA-noncompliant parking spaces constitute "architecture barriers." Specifically, Plaintiff alleges that Defendant has not removed discriminatory "architectural barriers where such removal [was] readily achievable," in violation of 42 U.S.C. § 12182(b)(2)(A)(iv). Compl. ¶ 17(b). To determine whether Plaintiff has made out an "architecture barriers" claim, the Court must determine whether Plaintiff has adequately pleaded that "(1) the lack of accessible parking is an architectural barrier, and (2) removal of these barriers is readily achievable." *Apac v. MEH Props. Inc.*, No. EP-24-CV-127-KC, 2024 WL 4647640, at *7 (W.D. Tex. Nov. 1, 2024) (citation modified).[4] The Court addresses each factor.

i. <u>The lack of accessible parking is an architectural barrier.</u>

The Court finds that the lack of accessible parking at Armando's Café #3 constitutes an "architectural barrier." District Courts in the Fifth Circuit affirm the same. *Id.* at *7–8 (holding plaintiff adequately pled "architectural barrier" claim because inaccessible parking constitutes an architectural barrier), *Thomas v. Century 7909, LLC*, No. CV H-21-466, 2022 WL 1507207, at *4 (S.D. Tex. May 12, 2022) (finding plaintiff entitled to injunctive relief on "architectural barrier" claim because parking spaces "obstructed by a protruding ramp and the shared access aisle" were a "barrier to access"); *Thomas v. 5860 San Felipe, Ltd.*, No. CV H-22-2001, 2024 WL 3378423, at *7 (S.D. Tex. July 11, 2024) (treating parking spaces as "architectural barrier" to evaluate "architectural barrier" claim).

Furthermore, whether a public accommodation has "architectural barriers" is determined "in part, by the ADA Accessibility Guidelines" ("ADAAG"). *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). The ADAAG are "[p]romulgated by the Attorney General

---

[4] The Court notes that *Apac v. MEH Props. Inc.*, No. EP-24-CV-127-KC, 2024 WL 4647640 (W.D. Tex. Nov. 1, 2024) appears to involve the same plaintiff and claims as the instant case.

to 'carry out the provisions' of the ADA." *Id.* (citing 42 U.S.C. § 12186(b)).  The guidelines detail the ADA's "structural requirements" and provide "the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Id.* (citation omitted).  So "if a barrier violating these standards relates to a plaintiff's disability, it ... constitutes 'discrimination' under the ADA." *Id.* at 947.

The Department of Justice has published two versions of the ADAAG: one in 1991, 28 C.F.R. Pt. 36, App. D ("1991 Guidelines"), and the other in 2010, *id.* Pt. 36 ("2010 Guidelines"). The Guidelines differ, and their respective application depends on when a facility was built.  28 C.F.R. § 36.406; *McCory v. Royal Ridge Inv., Inc.*, No. 14-cv-1453, 2015 WL 13916266, at *6 n.7 (C.D. Cal. Apr. 20, 2015).  And while facilities that existed before the 1991 Guidelines are not technically required to comply with either standard, the Guidelines still help determine whether a condition at a pre-existing facility constitutes an architectural barrier.  *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 435 F. Supp. 2d 1217, 1226 (N.D. Ga. 2005), *aff'd*, 452 F.3d 1269 (11th Cir. 2006).

Because Plaintiff does not plead when Armando's Café #3 was built, the Court does not know which version, if either, applies.  *See generally* Compl.  But both standards require accessible parking: Under the 2010 Guidelines, one in every six parking spaces in a business's parking lot must be van-accessible, 36 C.F.R. Pt. 1191, App. C, § 208.2.4, and under the 1991 Guidelines, one in every eight must be, 28 C.F.R. Pt. 36 App. D § 4.1.2(5)(b).

Plaintiff alleges that Armando's Café #3 has zero accessible parking spaces.  Compl. ¶ 2. Because this would be a violation under either version of the Guidelines and considering the authority of District Courts in the Fifth Circuit finding inaccessible parking an "architectural

barrier," the Court finds Plaintiff has adequately pled that Defendant has discriminatory architectural barriers.

ii.  Creating accessible parking is "readily achievable."

Moreover, removal of these barriers is readily achievable. For removal to be "readily achievable," it must be "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Even at the default judgment stage, the plaintiff bears the burden of alleging that removal is "readily achievable." *Van Winkle v. JSCP, LLC*, No. 17-cv-1986, 2018 WL 3756963, at *3 (S.D. Tex. Aug. 8, 2018) (citation omitted); *Burrell v. Twin Goose, LLC*, No. 16-cv-1079, 2017 WL 4230499, at *2 (N.D. Tex. Sept. 25, 2017).

Plaintiffs can meet this burden by alleging "that the requested modification is reasonable in the general sense, that is, reasonable in the run of cases." *Van Winkle*, 2018 WL 3756963, at *3 (citation omitted). The court then evaluates the allegations against the factors Congress identified for determining whether the modification is readily achievable. *See id.* (citing 42 U.S.C. § 12181(9)). These factors include: (1) the nature and cost of the action needed; (2) the overall financial resources of the noncompliant facility; (3) the overall financial resources of the covered entity; and (4) the type of operations of the covered entity. *Id.* § 12181(9)(A)–(D). But plaintiffs do not need to address each factor in detail. *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1038–39 (9th Cir. 2020); *see also Bledsoe v. A&Z Pharmacy, LLC*, No. 15-cv-2609, 2017 WL 1315827, at *3–4 (W.D. La. Feb. 10, 2017) (granting default judgment despite being unable to "evaluate [d]efendant's financial condition and resources").

Plaintiff alleges that providing enough ADA-compliant parking spaces in the Armando's Café #3 parking lot is "readily achievable." Compl. ¶ 13. He also provides photographs of the parking lot. *Id.* ¶ 10. While Plaintiff does not address the four factors relevant to whether a

modification is "readily achievable," the Court considers these factors and finds that creating ADA-compliant parking spaces is "readily achievable."

As other courts have noted, "[i]nstalling an accessible parking space is low cost and easy to do."  *Smith v. Hartmann's Moonshine Shoppe, LLC*, No. 17-cv-4211, 2019 WL 4888996, at *3 (D. Minn. Oct. 3, 2019).  Additionally, the Department of Justice has codified examples of readily achievable steps to remove barriers. *See* 28 C.F.R. § 36.034(b); *see also Ridola v. Chao*, No. 16-cv-2246, 2018 WL 2287668, at *11 (N.D. Cal. May 18, 2018) (noting that the steps listed in § 36.034(b) are "presumed to be readily achievable"). And included on this list is "[c]reating designated accessible parking spaces."  28 C.F.R. § 36.304(b)(18); *Thomas*, 2024 WL 3378423, at *7 ("The regulations themselves provide '[c]reating designated accessible parking spaces' as an example of a *readily achievable* modification for removing barriers in an existing facility.") (alteration in original) (citation omitted).

Thus, because creating accessible parking spaces is "readily achievable" and inaccessible parking constitutes an "architectural barrier," Plaintiff had adequately alleged a violation of 42 U.S.C. § 12182(b)(2)(A)(iv) for failure to provide accessible parking.  Accordingly, the Court recommends granting Plaintiff's Motion for Default Judgment as to his "architectural barrier" claim.

### b.  *42 U.S.C. § 12182(b)(2)(A)(ii) "Modification in Policy" Violation*

Plaintiff next alleges that because Armando Café #3's parking lot lacks ADA-compliant parking, Defendant violates 42 U.S.C. § 12182(b)(2)(A)(ii), which requires "reasonable modifications in policies, practices, or procedures, when such modifications" are necessary to accommodate disabled individuals.  Compl. ¶ 17(a).  Plaintiff does not specify a particular "policy,

practice, or procedure." Rather, it appears he alleges that the restaurant has a practice of lacking accessible parking.

The Court finds that Plaintiff has not sufficiently alleged a "modification in policy" claim because Plaintiff neither identifies a policy nor articulates how inaccessible parking constitutes a policy, practice, or procedure. District Courts in the Fifth Circuit have affirmed that inaccessible parking does not constitute a discriminatory policy, practice, or procedure for an ADA claim. *See Apac*, 2024 WL 4647640, at *6–7 (denying plaintiff's default judgment motion as to his "modification in policy" claim because plaintiff neither identified a policy nor explained how defendant's failure to provide accessible parking amounted to a policy); *MacClymonds v. IMI Invs., Inc.*, No. CIV.A. H-05-2595, 2007 WL 1306803, at *3 (S.D. Tex. Apr. 5, 2007) (holding that plaintiff did not adequately allege a "modification in policy" claim because "[p]laintiff does not identify any offending policy, practice, or procedure"); *MacClymonds v. Hansen*, No. CV H-06-2476, 2007 WL 9761655, at *11 (S.D. Tex. Aug. 6, 2007) (same).

Because Plaintiff neither identified a "policy, practice, or procedure" related to Defendant's ADA-noncompliant parking nor articulated how inaccessible parking constitutes a policy, practice, or procedure, the Court finds that Plaintiff has not adequately pled a "modification in policy" claim. Accordingly, the Court recommends denying Plaintiff's Motion for Default Judgment as to the "modification in policy" claim.

### c. *42 U.S.C. § 12183(a)(2) "Alteration" Violation*

Plaintiff next alleges that Defendant violated 42 U.S.C. § 12183(a)(2), which requires that any "alteration" of a facility is "readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs." Compl. ¶ 17(c). This provision specifically applies to alterations that occurred at least "30 months after July 26, 1990." 42 U.S.C. § 12183(a)(1).

Plaintiff's "alteration" claim fails because Plaintiff neither identifies an alteration in Armando's Café #3 or its parking lot nor specifies when an alteration, if any, took place. *See Apac*, 2024 WL 4647640, at *7 (dismissing plaintiff's default judgment motion as to the "alteration" claim because "Apac does not explain what alteration the [] parking lot underwent, if any, much less when the alteration took place); *cf. Tatum v. Doctor's Assocs., Inc.*, No. CV 14-2980, 2016 WL 852458, at *4–5 (E.D. La. Mar. 4, 2016) (finding that "converting two conventional parking spaces into handicap-accessible spaces" constituted alteration because conversion affected usability of the facility by disabled individuals).

Here, Plaintiff has neither alleged an alteration nor when any alteration occurred. Accordingly, the Court finds that Plaintiff has not adequately pled an "alteration" claim and recommends denying Plaintiff's Motion for Default Judgment as to this claim.

In sum, the Court finds that Plaintiff has adequately pled an "architectural barrier" claim but not a "modification in policy" or "alteration" claim.

## D. Entitlement to Injunctive Relief

Returning to the three-part test to evaluate the appropriateness of entering default judgment, the Court reviews that it found (1) default judgment is procedurally proper by analyzing the *Lindsey* factors and (2) that there is a sufficient basis in the pleadings for Plaintiff's "architecture barrier" claim. The Court finally examines the third step of the three-step inquiry: the appropriate form of relief. *See RLI Ins. Co.*, 581 F. Supp. 3d at 826.

"The only remedy available under Title III of the ADA is injunctive relief." *Apac*, 2024 WL 4647640, at *9. Plaintiff seeks a permanent injunction to "repave and restripe the parking lot to comply with the ADA." Compl. ¶ 19, Pl.'s Mot. Default J. ¶ 23. The Court finds that Plaintiff is entitled to a permanent injunction.

18

The party seeking a permanent injunction must establish that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) in considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

The Court finds that all four factors have been established. First, as to irreparable injury, Plaintiff has alleged that "[n]ot having access to [Armando's Café #3] ... negatively impacts" his daily life, and that he is "deterred from accessing Armando's Café #3" because it does not have any accessible parking spaces. Compl. ¶¶ 27–28. Further, as explained above, he has adequately alleged that the restaurant's lack of accessible parking constitutes an "architectural barrier" under the ADA. He has thus shown that he has suffered an irreparable injury. *See, e.g., Hernandez v. Roche*, No. 3:20-cv-263-DCG, 2022 WL 4072963, at *5 (W.D. Tex. Sept. 2, 2022) (plaintiff satisfied "irreparable injury" element because he plausibly alleged that he was discriminated against based on his disability), *aff'd*, No. 22-50927, 2023 WL 2645548 (5th Cir. Mar. 27, 2023).

Second, as mentioned above, remedies at law are unavailable under Title III. This factor thus also supports a permanent injunction. *See id.* at *5. Third, Armando's Café #3 would suffer little hardship by accommodating Plaintiff. Creating and designating accessible parking spaces is presumptively "readily achievable," and is "low cost and easy to do." *Smith*, 2019 WL 4888996, at *3. Accordingly, courts frequently order defendants, on default judgment, to provide ADA-compliant, van-accessible parking spaces. *See, e.g., Ramos*, 2023 WL 1099145, at *4 (recommending that defendant add "ADA compliant, van-accessible parking space in the parking

facility:); *Bledsoe*, 2017 WL 1315827, at *3–4 (same).  The balance-of-hardship factor thus also favors granting permanent injunctive relief.

Finally, the public interest is served by a permanent injunction.  "[T]he premise of civil rights law, including Title III, is that eradicating discrimination serves the public good."  *Apac*, 2024 WL 4647640, at *9; s*ee also Hale v. Eselin,* No. 1:24-CV-44-TBM-RMP, 2024 WL 3733397, at *4 (S.D. Miss. Aug. 8, 2024) ("[C]reating accessible facilities not only does not disserve the public—it *benefits* the public.").  Thus, the public interest factor also weighs in favor of granting permanent injunctive relief.

Accordingly, because Plaintiff has adequately established all four factors, the Court finds that Plaintiff is entitled to a permanent injunction.

## V.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's Motion for Default Judgment (ECF No. 13) be **GRANTED IN PART** and **DENIED IN PART**.

The Motion is **GRANTED** as to Plaintiff's 42 U.S.C. § 12182(b)(2)(A)(iv) "architectural barrier" claim.   The Motion is **DENIED** as to Plaintiff's 42 U.S.C. § 12182(b)(2)(A)(ii) "modification in policy" claim and 42 U.S.C. § 12183(a)(2) "alteration" claim.

It is **FURTHER RECOMMENDED** that Defendant **SHALL COMPLY** with Title III of the Americans with Disabilities Act.  Specifically, Defendant must take the following actions:

a.  Ensure that one out of every six parking spaces in the Armando's Café #3 parking lot is van accessible, pursuant to 36 C.F.R. pt. 1191, App. C, § 208.2.4.[5]

---

[5] "[T]he 2010 Standards govern any injunction that the Court issues, as all remedial work will be undertaken after March 15, 2012."  *Johnson v. Monterey & Rancho Plaza*, No. 19-cv-5718, 2020 WL 5893319, at *5 (N.D. Cal. Oct. 5, 2020); *see also* 28 C.F.R. § 35.151(c)(5)(ii).

b. Ensure that one accessible parking space "be located on the shortest accessible route from parking" to Armando's Café #3's entrance, pursuant to 36 C.F.R. pt. 1191, App. C, § 208.3.1.

c. Ensure that all accessible parking spaces are designated as reserved by a sign showing the symbol of accessibility, pursuant to 36 C.F.R. pt. 1191, App. C, § 216.5.[6]

**SIGNED** and **ENTERED** this <u>25th</u> day of August 2025.

**MIGUEL A. TORRES**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**

---

[6] Separately, the Court recognizes that Plaintiff requests attorney's fees. Pl.'s Mot. Default J. 8–9. However, Plaintiff must address this request through a separate motion as provided by Federal Rule of Civil Procedure 54 and Local Rule CV-54. *See Ramos*, 2023 WL 1099145, at *4 ("If Plaintiff moves for an award of costs and fees, the costs, expert fees, and attorneys' fees that Plaintiff incurs or has incurred will be reviewed for reasonableness by the Court and shall be submitted by separate motion in accordance with Federal Rule of Civil Procedure 54 and Local Rule CV-54.").

Plaintiff also requests for permission through his counsel to engage in "post-judgment discovery" to ensure compliance with the permanent injunction and for the Court to retain jurisdiction over this matter to monitor Defendant's compliance with the injunction. Compl. ¶¶ 27–28. This Court does not object to either request but leaves the matter to the final discretion of the referring court.